# **EXHIBIT C**



**The Ethics and Compliance Experts**

*Outstanding People Doing Extraordinary Things!*

## IDAHO EMPLOYEES
### CONFIDENTIALITY, INVENTION ASSIGNMENT, NON-COMPETE AND ARBITRATION AGREEMENT

As a condition of your employment with NAVEX Global, Inc, (as such company's name may change from time to time and such company's successors and assigns)(collectively, the "***Company***"), you and the Company agree to the following:

For purposes of this Agreement, references to the "***Group***" means the Company, and its affiliates (whether a parent, subsidiary, or sister entity to the Company) engaged in the same line of business as the Company.

---

### 1.    CONSIDERATION FOR AGREEMENT.

You understand that the Group is engaged in a continuous program of research, development, production and marketing in connection with its business and that it is critical for the Group to preserve and protect its "Proprietary Information" (as defined in Section 2 below), its rights in "Inventions" (as defined in Section 4 below) and in all related intellectual property rights. You acknowledge that, as a result of your employment with the Company and/or its predecessors, you have and/or may receive confidential information, trade secrets, and/or specialized training from the Group, each of which constitutes good and valuable consideration in support of your obligations under this Confidentiality, Invention Assignment, Non-Solicit, Non-Compete and Arbitration Agreement (the "***Agreement***"). As additional consideration, you may also have the opportunity to develop valuable business relationships with employees, agents, suppliers, and customers of the Group and to use the Group's resources and goodwill in the marketplace to develop those relationships. Finally, by your signature below, you acknowledge that your employment with the Company (subject to Section 9), which the Company would not allow but for your execution of this Agreement constitute consideration in support of your return promise to maintain the confidentiality of all specialized knowledge and confidential information as well as your promise to adhere to the other restrictions listed in this Agreement.

### 2.    PROPRIETARY INFORMATION.

You understand that your employment creates a relationship of confidence and trust with respect to any information of a confidential or secret nature that may be disclosed to you or created by you that relates to the business of the Group or to the business of its customers, licensees, suppliers or any other party with whom the Group agrees to hold information of such party in confidence (the "***Proprietary Information***").

You understand and agree that the term "Proprietary Information" includes but is not limited to information of all types contained in any medium now known or hereafter invented, whether oral or written and regardless of whether it is marked as confidential, proprietary or a trade secret. "Proprietary Information" includes, without limitation, the following information and materials, whether having existed, now existing or developed or created by you or on your behalf during your term of employment with the

Company or its predecessor:

A)   All information and materials relating to the existing software products and software in the various stages of research and development, including, but not limited to, source codes, object codes, design specifications, design notes, flow charts, graphics, graphical user interfaces, coding sheets, product plans, know-how, negative know how, test plans, business investment analysis, marketing and functional requirements, algorithms, product bugs and customer technical support cases which relate to the software;

B)   Internal business information, procedures and policies, including, but not limited to, licensing techniques, vendor names, other vendor information, business plans, financial information, budgets, forecasts, product margins, product costs, service and/or operation manuals and related documentation including drawings, and other such information, whether written or oral, which relates to the way the Group conducts its business or intends to conduct its business;

C)   All legal rights, including but not limited to, trade secrets, pending patents, Inventions (as that term is defined in section 4 below) and other discoveries, claims, litigation and/or arbitrations involving the Group, pending trademarks, copyrights, proposed advertising, public relations and promotional campaigns and like properties maintained in confidence;

D)   Any and all customer or prospect sales and marketing information, including but not limited to customer or prospect identity, sales forecasts, marketing and sales promotion plans, product launch plans, sales call reports, competitive intelligence information, customer information, customer lists, customers' needs and buying habits, sales and marketing studies and reports, internal price list, discount matrix, customer data, customer contracts, pricing structures, customer negotiations, customer relations materials, customer service materials, past customers, and the type, quantity and specifications of products purchased, leased or licensed by customers of the Group;

E)   Any and all employee information, including, but not limited to, internal organization, lists of employees or consultants,

EXHIBIT C

Confidentiality, Invention Assignment, Non-Compete and Arbitration Agreement – Idaho

phone lists, and any information regarding such employees or consultants;

F) Any information obtained while working for the Group which gives the Group a competitive edge;

G) Any other knowledge or information regarding the property, business, and affairs of the Group which the Group endeavors to keep confidential or which the Group believes to be confidential; and

H) Any and all other trade secrets, as that term is defined under applicable laws.

You understand and agree to treat and preserve Proprietary Information and materials as strictly confidential. Except as authorized by the Company's Chief Executive Officer in writing (but in all cases preserving confidentiality by following Company policies and obtaining appropriate non-disclosure agreements), you further agree that you will not directly or indirectly transmit or disclose Proprietary Information to any person, corporation, or other entity for any reason or purpose whatsoever.

You understand and agree that the Proprietary Information is the exclusive property of the Group, and that, during your employment, you will use and disclose Proprietary Information only for the Group's benefit and in accordance with any restrictions placed on its use or disclosure by the Group. After termination of your employment for any reason, you will not use in any manner or disclose any Proprietary Information.

Proprietary Information does not include information (i) that was or becomes generally available to you on a non-confidential basis, if the source of this information was not reasonably known to you to be bound by a duty of confidentiality, or (ii) that was or becomes generally available to the public, other than as a result of a disclosure by you, directly or indirectly or any other breach of this Agreement, or by any other person or entity that was prohibited from disclosing such information.

3.      **THIRD PARTY INFORMATION.**  You recognize that the Group has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Group's part to maintain the confidentiality of such information and to use it only for certain limited purposes. You agree that you owe the Group and such third parties, during the term of your employment, and thereafter, a duty to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation (except as necessary in carrying out your work for the Group consistent with the Group's agreement with such third party) or to use it for the benefit of anyone other than for the Group or such third party (consistent with the Company's agreement with such third party) without the express written authorization of the Chief Executive Officer of the Company. All rights and benefits afforded to the Company under this Agreement shall apply equally to the owner of the third party information with respect to the third party information, and such third party is an intended third party beneficiary of this Agreement, with respect to the third party information. You further agree to conform to the Company's privacy policies, as amended from time to time.

4.      **INVENTIONS.**

4.1      **Prior Inventions.** You have attached hereto as Schedule 1 a complete and accurate list describing all Inventions (as defined below) which were discovered, created, invented, developed or reduced to practice by you prior to the commencement of your employment by the Company or have not been legally assigned or licensed to the Company (collectively: "***Prior Inventions***"), which belong solely to you or belong to you jointly with others, which relate in any way to any of the Group's current, proposed or reasonably anticipated businesses, products or research or development and which are not assigned to the Group hereunder; or you have initialed Schedule 1 to indicate you have no Prior Inventions to disclose.

If, in the course of your employment with the Company, you incorporate or cause to be incorporated into a Group product, service, process, file, system, application or program a Prior Invention owned by you or in which you have an interest, you hereby grant the Group member a non-exclusive, royalty-free, irrevocable, perpetual, worldwide, sublicensable and assignable license to make, have made, copy, modify, make derivative works of or from, use, offer to sell, sell or otherwise distribute such Prior Invention as part of or in connection with such product, process, file, system, application or program.

4.2      **Disclosure of Inventions.** You will promptly disclose in confidence to the Company all Inventions that you make or conceive or first reduce to practice or create, either alone or jointly with others, during the period of your employment, whether or not in the course of your employment, and whether or not such Inventions are patentable, copyrightable or protectable as trade secrets. For purposes of this Agreement, "***Inventions***" means without limitation, formulas, algorithms, processes, techniques, concepts, designs, developments, technology, ideas, patentable and unpatentable inventions and discoveries, copyrights and works of authorship in any media now known or hereafter invented (including computer programs, source code, object code, hardware, firmware, software, mask work, applications, files, Internet site content, databases and compilations, documentation and related items), patents, trade and service marks, logos, trade dress, corporate names and other source indicators and the good will of any business symbolized thereby, trade secrets, know-how, confidential and proprietary information, documents, analyses, research and lists (including current and potential customer and user lists) and all applications and registrations and recordings, improvements and licenses related to any of the foregoing.

4.3      **Work for Hire; Assignment of Inventions.** You acknowledge and agree that any copyrightable works prepared by you within the scope of your employment are "works made for hire" under the Copyright Act and that the Company will be considered the author and owner of such copyrightable works. Any copyrightable works the Company or a Group member specially commissions from you while you are employed with the Company shall be deemed a work made for hire under the Copyright Act and if for any reason a work cannot be so designated as a work made for hire, you hereby assign to the Company all right, title and interest in and to said work(s). You hereby grant the Company a non-exclusive, royalty-free, irrevocable, perpetual, worldwide, sublicensable and assignable

January2015

Confidentiality, Invention Assignment, Non-Compete and Arbitration Agreement – Idaho

license to make, have made, copy, modify, make derivative works of or from, use, publicly perform, display or otherwise distribute any copyrightable works you create during the time you are employed with the Company that for any reason do not qualify as a work made for hire, that were not specially commissioned by the Group, or both, but that relate in any way to the business of the Group. You agree that all Inventions that (i) are developed using equipment, supplies, facilities or trade secrets of the Group, (ii) result from work performed by you for the Group, or (iii) relate to the Group's business or current or anticipated research and development (the "**Assigned Inventions**"), will be the sole and exclusive property of the Company and you irrevocably assign the Assigned Inventions to the Company.

**4.4** **Assignment of Other Rights.** In addition to the foregoing assignment of Assigned Inventions to the Company, you hereby irrevocably transfer and assign to the Company: (i) all worldwide patents, patent applications, copyrights, mask works, trade secrets and other intellectual property rights in any Assigned Inventions; and (ii) any and all "Moral Rights" (as defined below) that you may have in or with respect to any Assigned Inventions. You also hereby forever waive and agree never to assert any and all Moral Rights you may have in or with respect to any Assigned Inventions, even after termination of your work on behalf of the Company. "**Moral Rights**" mean any rights to claim authorship of any Assigned Inventions, to object to or prevent the modification of any Assigned Inventions, or to withdraw from circulation or control the publication or distribution of any Assigned Inventions, and any similar right, existing under judicial or statutory law of any country in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right".

**4.5** **Assistance.** Whether during or after your employment, and without additional compensation, you agree to promptly do any act and/or execute any document deemed necessary or desirable by the Company in furtherance of perfecting, prosecuting, recording, maintaining, enforcing and protecting the Group's right, title and interest in and to, any of the Assigned Inventions. In the event that the Company is unable for any reason to secure your signature to any document required to file, prosecute, register or memorialize the ownership and/or assignment of, or to enforce, any intellectual property, you hereby irrevocably designate and appoint the Company's duly authorized officers and agents as your agents and attorneys-in-fact to act for and on your behalf and stead to (i) execute, file, prosecute, register and/or memorialize the assignment and/or ownership of any Assigned Invention; (ii) to execute and file any documentation required for such enforcement and (iii) do all other lawfully permitted acts to further the filing, prosecution, registration, memorialization of assignment and/or ownership of, issuance of and enforcement of any Assigned Inventions, all with the same legal force and effect as if executed by you.

**5.** **NO BREACH OF PRIOR AGREEMENT.** You represent that your performance of all the terms of this Agreement and your duties as an employee of the Company will not breach any invention assignment, proprietary information, confidentiality or similar agreement with any former employer or other party. You represent that you will not bring with you to the

Company or use in the performance of your duties for the Company any documents or materials or intangibles of a former employer or third party that are not in the public domain or have not been legally transferred or licensed to the Company.

**6.** **DUTY OF LOYALTY.**

**6.1** **Undivided Attention.** You understand that your employment with the Company requires your undivided attention and effort during normal business hours. While you are employed by the Company, you will not, without the Company's express prior written consent, (i) engage in any other business activity, unless such activity is for passive investment purposes only and will not require you to render any services, (ii) be engaged or interested, directly or indirectly, alone or with others, in any trade, business or occupation in competition with the Group, (iii) make preparations, alone or with others, to compete with the Group in the future, or (iv) appropriate for your own benefit business opportunities pertaining to the Group's business. The foregoing does not limit your ability to serving on civic and charitable boards or committees.

**6.2** **Non-Disparagement.** During and after your employment with the Company, you agree you shall not make any negative comments about or otherwise disparage, the Group or it's respective officers, directors, agents, servants, employees, attorneys, shareholders, successors or assigns or their respective products or services, in any manner (including but not limited to, verbally or via hard copy, websites, blogs, social media forums or any other medium).

**7.** **DUTY OF NON INTERFERENCE.**

For purposes of this Section, "solicit" means any direct or indirect communication of any kind, initiated by you, that in any way invites, advises, encourages or requests any person to take or refrain from taking any action.

**7.1** **Employees/Consultants.** During your employment with the Company or any Group Comany and for a period of two (2) years thereafter, you will not directly or indirectly hire, attempt to hire, recruit, offer employment, lure or entice away, or in any other manner persuade or otherwise solicit anyone who is then an employee or consultant of the Group (or who was an employee or consultant of the Group within the prior six months) to resign from the Group or to apply for or accept employment with you or with any third party.

**7.2** **Suppliers/Customers.** During your employment with the Company or any Group Company and for the Restricted Period (as defined in section 7.3), you will not directly or indirectly (i) solicit or accept from any Customer or Prospect of the Group, any business that is comparable or similar to or otherwise competitive with the existing or intended business of the Group; (ii) request, suggest or advise any Customer, Prospect or supplier of the Group to curtail, cancel, or withdraw its business from any Group Company; or (iii) aid in any way any other entity or person in obtaining business from any Customer or Prospect of the Group that is comparable or similar to any products or services provided by the Group. For purposes of this Section 7, "**Prospect**" means a potential customer with whom the Company or a Group Company has had business dealings or from

Confidentiality, Invention Assignment, Non-Compete and Arbitration Agreement – Idaho

whom it has obtained Proprietary Information or has approached the Company or any Group Company or has been approached by the Company or any Group Company for business, provided that the Company or Group Company is engaged in actively pursuing such business within the six months prior to any solicitation or other activity prohibited under this Section 7 and further provided that you were involved in, or possessed knowledge of, the solicitation of such prospect during the term of your employment. For purposes of this Section 7), **"Customer"** means any purchaser of Company or Group services or products within the 24 month period prior to any solicitation or other activity prohibited under this Section 7 and about whom one of the following is true: during the term of your employment, (i) you worked on or were connected to such customer's account; (ii) you had contact with the customer as a Company or Group representative; or (iii) about whom you learned or developed Proprietary Information.

**7.3** **Non-Competition**. During your employment with the Company or any Group Company and for a period of eighteen (18) months thereafter (the "**Restricted Period**"), you will not, directly or indirectly, whether as an employee, officer, director, consultant, owner, manager, advisor, investor, or otherwise, in any city or county or geographic area in which you provided services or had a significant presence or influence on behalf of the Company or a Group Company ("**Restricted Area**") (i) render advice or services to, or otherwise assist, any person, association, or entity who is engaged, directly or indirectly, in the Restricted Business; (ii) hold a 2.5% or greater equity, voting or profit participation interest in any person, association, or entity who is engaged, directly or indirectly, in the Restricted Business or (iii) carry on or be in any way engaged, concerned or interested in or have business dealings with the Restricted Business. For purposes of this section, "**Restricted Business**" means the business of researching into, developing, manufacturing, distributing, selling, supplying or otherwise dealing with Restricted Products. "**Restricted Products**" means products or services which are of the same or materially similar kind as the products or services (including but not limited to technical and product support, professional services, technical advice and other customer services) researched into, developed, manufactured, distributed, sold or supplied by the Group and with which you were directly connected during your employment with the Company and/or its predecessor. For the avoidance of doubt, the Restricted Area includes without limitation any particular region or country in which you were involved in providing Restricted Products and any city, county or similar geographic subdivision in which a Customer, as defined in Section 7.2, is located. Notwithstanding the foregoing, with prior written consent from the Company, which consent shall be exercised in its sole discretion, you may accept employment or otherwise be engaged in or involved with a competitor of the Group that has multiple lines of business provided that, during the Restricted Period, you are employed by a business unit of such competitor that is not engaged or otherwise involved with the Restricted Business. Nothing contained in this Section 7 shall prohibit you from owning of a passive investment interest of not more than 2.5% in a company with publicly traded equity securities, and whether on your own behalf or on behalf of others. You agree that the Restricted Period shall be extended by a period equal the length of any violation of

this Section 7.2 or 7.3.

**7.4** **Employment by Customers.** For a period of eighteen (18) months following termination of your employment for any reason, you will not accept employment with any customer of the Group in a capacity of service that could otherwise be offered as a service by the Company for such customer without the Company's express written permission, which permission shall be exercised in its sole discretion.

**8.** **OBLIGATIONS UPON TERMINATION.**

**8.1** **Return of Company Property**. At the time of leaving the employ of the Company, or at any earlier time upon request of the Company, you will deliver to the Company (and will not keep in your possession or deliver to anyone else) (i) any and all documents and materials of any nature pertaining to your work, including without limitation devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items, including without limitation all Proprietary Information and copies thereof, regardless of form, and (ii) all property belonging to the Group or any third party which provided property to you in connection with your employment such as computer, laptops, personal digital assistants, cell phones, MP3 players, electronic organizers and other devices, cards, car, keys, security devices or any other item belonging to the Group. Upon Company request, you will execute a document confirming your compliance with this provision and the terms of this Agreement.

**8.2** **Notification of New Employer**. Before you either apply for or accept employment with any other person or entity while any of Section 7 is in effect, you will provide the prospective employer with written notice of the provisions of Section 7 and will deliver a copy of the notice to the Company. For a period of two years following termination of your employment with the Group, you agree to furnish Company with the name and address of any new employer for whom you provide services, as well as the capacity in which you will be employed. Without limitation of any of Company's rights under applicable law, you hereby grant consent to notification by the Company to your new employer about your rights and obligations under this Agreement.

**8.3** **Withholding.** To the extent allowed by law, you agree to allow Company to deduct from your final paycheck(s) any amounts due as a result of your employment, including but not limited to, any expense advances or business charges incurred by you on behalf of the Group, charges for property damaged or not returned when requested, and any other charges incurred by you payable to the Group. You agree to execute any authorization form as may be provided by Company to effectuate this provision.

**9.** **AT WILL EMPLOYMENT.**

This Agreement does not constitute a contract of employment for any definite period of time. You acknowledge and agree that nothing in this Agreement modifies the at-will nature of your employment with Company, which permits either yourself or Company to terminate your employment at any time and without cause.

Page 4 of 9

January 2015

Confidentiality, Invention Assignment, Non-Compete and Arbitration Agreement – Idaho

## 10.    ARBITRATION.

In the event of any controversy or dispute between you and the Company or between you and any affiliate or an agent of Company, including but not limited to directors, officers, managers, other employees or members of the Group, who are being sued in any capacity, as to all or any part of this Agreement, any other agreement, any dispute or controversy whatsoever pertaining to or arising out of the relationship between you and the Company or the dissolution or termination of same, and/or the arbitrability thereof (collectively, "**Arbitrable Disputes**") shall, subject to Section 11.1 herein, be resolved exclusively by binding arbitration solely between yourself and the Company conducted in Madison County, Idaho, which shall be conducted in accordance with the procedures set forth in the Dispute Resolution Addendum appended hereto as Schedule 2 (the "**Addendum**"), all of which are incorporated into this Agreement by this reference. All Arbitrable Disputes under this Agreement must be brought in your individual capacity, and not as a plaintiff or class member in any purported class, representative or collective proceeding. Arbitrable Disputes include, but are not limited to, any alleged violations of federal, state or local constitutions, statutes, laws, ordinances, regulations or common law, any claims of wrongful termination, unlawful discrimination, harassment or retaliation, including but not limited to Title VII of the 1964 Civil Rights Act, The Equal Pay Act, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Fair Labor Standards Act and similar state and local statutes, any claims of breach of contract or any implied covenant of good faith and fair dealing, any claims of adverse treatment in violation of public policy, and any disputes arising from, under or regarding this Agreement, including the formation, validity, interpretation, effect or breach of the Agreement. Specifically excluded from Arbitrable Disputes are disputes or claims arising from or related to workers' compensation and unemployment insurance, and any claims which are expressly excluded from binding arbitration by statute or public policy, or which are expressly required to be arbitrated under a different procedure. Nothing in this Agreement shall prevent you, so long as you have standing and are covered by applicable law, from filing or maintaining an administrative charge or complaint with a government agency, including but not limited to, the Equal Employment Opportunity Commission, the Department of Labor and the National Labor Relations Board or any equivalent state or local agency. This binding arbitration procedure shall supplant and replace claims in court (except as specified herein), and you expressly waive the right to a civil court action before a jury.

You agree that the arbitrator is not empowered to consolidate claims of different individuals into one proceeding, or to hear an arbitration as a class arbitration. Only a court of competent jurisdiction, to the exclusion of an arbitrator, shall determine the validity and effect of this class/collective action waiver. To the extent a court determines that this class/collective action waiver is invalid, for any reason, this entire Section 10 shall be null and void but only with regard to that particular proceeding in which the court invalidated this class/collective action waiver.

The Company hereby recognizes your right, to the extent applicable, under Section 7 of the National Labor Relations Act ("Section 7") concertedly to challenge the validity of this forum waiver agreement, and that this agreement does not constitute a waiver of such rights under Section 7. Individuals will not be disciplined, discharged or otherwise retaliated against by the Company for exercising their rights under Section 7.

Notwithstanding the above, in the event of any dispute arising from Sections 2, 3, 4, 6, 7 and/or 8.1 of this Agreement, and/or relating to the protecting of the Company from unfair competition, unfair solicitation and/or the misappropriation or misuse of its confidential information and trade secrets, this Agreement shall not limit the Company's right to apply to any court of competent jurisdiction for a temporary restraining order, preliminary injunction or similar relief in order to preserve the status quo or prevent irreparable injury pending the full and final resolution of such dispute through arbitration pursuant to the Addendum.

## 11.    GENERAL.

**11.1    Injunctive Relief**. You understand that in the event of a breach or threatened breach of Sections 2 through 7 and/or 8.1 of this Agreement by you, the Group will suffer immediate and irreparable harm for which there is no adequate remedy at law; therefore, in such event the Company will be entitled to apply for temporary restraining order, injunctive relief or other interim or conservatory relief in any state or federal court in the State of Idaho to enforce this Agreement without the necessity of proof of actual damage, in addition to and without waiver of any such other relief to which it may be entitled, including without limitation damages . Under this Section 11.1, the Company may apply directly to a state or federal court in the State of Idaho and need not seek such relief in any arbitration proceedings. In accordance with Section 11.7, you agree that any such application under this Section must be brought and  maintained solely and exclusively in a state or federal court in the State of Idaho, and you consent to personal jurisdiction and venue in the State of Idaho. In the event Company files suit for such injunctive relief, you waive the right to bring a counterclaim against the company in the context of such suit, waive any right to a trial by jury, and further waive the right to initiate any separate litigation which could be consolidated with the action for injunctive relief.

**11.2    Judicial Modification.** If the scope of any restriction contained in this Agreement is too broad to permit enforcement of such restriction to its full extent, then such restriction shall be enforced to the maximum extent permitted by law, and the parties consent and agree that such scope may be accordingly judicially modified in any proceeding brought to enforce such restriction.

**11.3    Waiver of Breach; Independent Covenants.** The failure of Company at any time, or from time to time, to require performance of any of your obligations under this Agreement shall not be deemed a waiver of and shall in no manner affect Company's right to enforce any provision of this Agreement at a subsequent time. The waiver by Company of any rights arising out of any breach shall not be construed as a waiver of any rights arising out of any subsequent breach. Should Company breach an obligation under this Agreement, you may pursue a claim for any damages suffered but shall remain bound by the terms of this Agreement. The restrictive covenants in this Agreement shall be construed as agreements independent of any other provisions of

Confidentiality, Invention Assignment, Non-Compete and Arbitration Agreement – Idaho

this Agreement or your employment with Company, and the existence of any claim or cause of action of you against Company, whether predicated upon this Agreement or otherwise, shall not constitute a defense to the enforcement by Company of such restrictive covenants.

**11.4     Assignment.** This Agreement will be binding upon your heirs, executors, administrators and other legal representatives and will be for the benefit of the Group, its successors, its assigns and licensees. This Agreement, and your rights and obligations hereunder, may not be assigned by you; however, the Company may assign its rights hereunder in connection with any sale, transfer or other disposition of any or all of its business or assets.

**11.5     Partial Invalidity.** If any provision of this Agreement or the application of such provision be held unenforceable for any reason by a court of competent jurisdiction, then such provision shall be modified to the extent to render it enforceable (or, if held impossible to modify), then severed from this Agreement and the remainder of this Agreement shall not be affected.

**11.6     Applicable Law.** This Agreement shall be governed by the laws of the State of Idaho, notwithstanding any Idaho or other conflict of law provision to the contrary.

**11.7     Entire Agreement.** This Agreement along with Schedules 1 and 2 and the documents referred to herein constitute the entire agreement and understanding of the parties with respect to the subject matter of this Agreement, and supersede all prior understandings and agreements, whether oral or written, between or among the parties hereto with respect to the specific subject matter hereof. Headings are provided for convenience only and do not modify, broaden, define or restrict any provision.

**11.8     Survival.** Any termination of this Agreement and/or your employment, regardless of how such termination may occur or the reason therefor, shall not operate to terminate Sections 2, 3, 4, 5, 7, 8, 10 and 11 which shall survive any such termination and remain valid, enforceable and in full force and effect.

NAVEX Global, Inc

By: *Shon C Ramey*
    Shon C Ramey (Nov 28, 2016)
Name
Title    Shon C Ramey
Date    General Counsel

        Nov 28, 2016

By: *Richard A Stockwell Jr.*
    Richard A Stockwell Jr. (Nov 28, 2016)
Name of employee:

        Richard A Stockwell Jr.
Date

        Nov 28, 2016

Confidentiality, Invention Assignment, Non-Solicit, Non-Compete and Arbitration Agreement – Idaho

**Schedule 1**
**(List of Employee's Prior Inventions)**

_RS_                    By initialing here, I represent and warrant that I have no Prior Inventions, as that term is defined in the Agreement to which this Schedule 1 is attached.

OR

_____                    Below is a complete and accurate list of Prior Inventions, as that term is defined in the Agreement to which this Schedule 1 is attached.

By: _Richard A Stockwell Jr._
      Richard A Stockwell Jr. (Nov 28, 2016)

Name of Employee:   Richard A Stockwell Jr.
Date:
          Nov 28, 2016

January2015

Confidentiality, Invention Assignment, Non-Solicit, Non-Compete and Arbitration Agreement – Idaho

## Schedule 2
## Dispute Resolution Addendum

a.   For purposes of this Addendum, all capitalized terms shall have the meaning set forth in the Confidentiality, Invention Assignment, Non Solicit, Non-Compete and Arbitration Agreement (the "Agreement") to which this Addendum is appended.  "Employee" means the individual employed by or performing services for the Company or any affiliate who signed the Agreement.

b.   Employee and Company agree that in the event of any Arbitrable Dispute (except for the seeking of injunctive relief by Company in connection with Section 11 of the Agreement), and prior to the service of an Arbitration Demand as set forth in paragraph d below, they shall negotiate in good faith to resolve the controversy or claim privately, amicably and confidentially.   Each party may be represented by an attorney selected by the party in connection with such negotiations and with respect to any other part of the procedure described herein.

c.   Excepting only: (1) worker's compensation claims; or (2) unemployment compensation claims, or (3) any other claim which by law may not be subject to arbitration, all Arbitrable Disputes shall be resolved only by final and binding arbitration conducted privately and confidentially by a single arbitrator selected as specified in this Addendum. Both of the parties agree that they will bring any dispute only in an individual capacity, not as a plaintiff or class member in any purported class, representative and/or collective proceeding. They also agree that the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. Without limiting the generality of the foregoing, the parties understand and agree that any dispute sounding in or relating to a claim of discrimination and/or workplace harassment and/or payment of unpaid wages shall be resolved only by arbitration as provided in this Addendum. The parties understand and agree that the Agreement evidences a transaction involving commerce within the meaning of 9 U.S.C. § 2, and that the Agreement shall therefore be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq.

d.   Notwithstanding any statute or rule governing limitations of actions, but only to the extent permitted by applicable law, any arbitration relating to or arising from any Arbitrable Dispute shall be commenced by service of an arbitration demand before the one-year anniversary of the accrual of the aggrieved party's claim pursuant to Idaho law.   Otherwise, all claims that were or could have been brought by the aggrieved party against the other party shall be forever barred. Notwithstanding the foregoing or any other provision of this Addendum, if a party timely commences an arbitration under this Addendum and the responding party has a counterclaim against the claimant that would have been timely had it been asserted on the date the claimant served its arbitration demand but that thereafter was extinguished by this section d, then, notwithstanding the one-year limitation of action set forth in the preceding sentence, this Addendum shall not time-bar the counterclaim so long as it is asserted no later than the date specified in section e, below, for the filing of a response to the arbitration demand.

e.   To commence an arbitration pursuant to this Agreement, a party shall serve a written arbitration demand (the "Demand") on the other party by certified mail, return receipt requested or by personal service. The claimant shall attach a copy of the Agreement and this Addendum to the Demand, which shall also describe the Arbitrable Dispute in sufficient detail to advise the respondent of the nature and basis of the dispute, state the date on which the dispute first arose, list the names and addresses of every person, including without limitation current or former employee of Company or any affiliate, whom the claimant believes does or may have information relating to the dispute, and state with particularity the relief requested by the claimant, including a specific monetary amount, if the claimant seeks a monetary award of any kind.  Within thirty days after receiving the Demand, the respondent shall mail to the claimant a written response to the Demand (the "Response") that may include one or more counterclaims and that shall describe in reasonable detail the respondent's position in connection with the dispute and any counterclaim asserted.  The Response shall also, if applicable, state the date on which any counterclaim first arose, list the names and addresses of every person, including without limitation current or former employee of Company or any affiliate, whom the respondent believes does or may have information relating to the dispute, and state with particularity the relief requested by the respondent, including a specific monetary amount, if the respondent seeks a monetary award of any kind.

f.   Promptly after service of the Response, the parties shall confer in good faith to attempt to agree upon a suitable arbitrator.  If the parties are unable to agree upon an arbitrator, the claimant shall request from the American Arbitration Association ("AAA") a list of nine potential arbitrators randomly selected from the AAA's employment arbitration panel for the area in which the hearing is required to take place or, if no employment arbitration panel exists for that area, then from the AAA's commercial arbitration panel for that area (the "List").  The Company shall bear the cost of obtaining the List, and the AAA shall provide simultaneously to the claimant and the respondent by fax, email, hand delivery or any other expeditious mode of delivery. The Company shall bear the costs of the arbitrator only to the extent required by applicable law.  The AAA shall not administer the arbitration or have any role in the arbitration other than providing the List, unless the parties both agree otherwise in writing.  No later than five business days after the List is received by the parties, or within such other time period as agreed by the parties in writing, they shall conduct a meeting or conference call during which they shall alternate in striking names from the List, beginning with the claimant.  After each party has stricken four names from the list, the one remaining individual shall be appointed to serve as arbitrator and shall thereafter resolve the Arbitrable Dispute in accordance with this Addendum.

g.   Notwithstanding the choice-of-law principles of any jurisdiction, the arbitrator shall be bound by and shall resolve all Arbitrable Disputes in accordance with the substantive law of the State of Idaho, federal law as enunciated by the federal courts situated in the Ninth Circuit, and all Idaho and Federal rules relating to the admissibility of

January 2015

Confidentiality, Invention Assignment, Non-Solicit, Non-Compete and Arbitration Agreement – Idaho

evidence, including, without limitation, all relevant privileges and the attorney work product doctrine.

h.   All facts relating to or concerning the Arbitrable Dispute and arbitration, including without limitation the existence of the arbitration, the nature of the claims and defenses asserted, and the outcome of the arbitration shall be confidential and shall not be disclosed by the claimant, the respondent or the arbitrator without the prior written consent of both the claimant and the respondent. Notwithstanding the foregoing confidentiality obligation, the claimant and respondent may divulge information rendered confidential pursuant to this Addendum to the extent necessary to prosecute or defend the arbitration or any related judicial proceeding, and the Company may disclose such information to its employees and agents in the ordinary course of their performance of their duties for the Company.

i.   Before the arbitration hearing, each party shall be entitled to take discovery depositions of three fact witnesses and, in addition, the discovery deposition of every expert witness expected to testify for the opposing party at the arbitration hearing; provided that to the extent the arbitrator concludes that applicable law would render this subsection (i) unconscionable or otherwise unenforceable, the arbitrator shall have the authority to order additional depositions sufficient to protect the enforceability of this subsection (i). Upon the written request of either party, the other party shall promptly produce documents relevant to the Arbitrable Dispute or reasonably likely to lead to the discovery of admissible evidence. The manner, timing and extent of any further discovery shall be committed to the arbitrator's sound discretion, provided that the arbitrator shall upon a showing of reasonable cause permit any party to take a preservation deposition of any witness for use in at any hearing in lieu of live testimony, and provided further that under no circumstances shall the arbitrator allow more depositions or interrogatories than permitted by the presumptive limitations set forth in Fed. R. Civ. P. 30(a)(2)(A) and 33(a). The arbitrator shall levy appropriate sanctions, including an award of reasonable attorneys' fees, against any party that fails to cooperate in good faith in discovery permitted by this Addendum or ordered by the arbitrator.

j.   Either party shall have the right to subpoena witnesses and documents for the arbitration as well as documents relevant to the case from third parties. The arbitrator shall have the jurisdiction to hear and rule upon pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the arbitrator deems advisable. The arbitrator shall have the authority to entertain a motion to dismiss, a motion for summary judgment and/or any other dispositive motion by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure. Either party, at its expense, may arrange and pay the cost of a court reporter to provide a stenographic record of the proceedings; provided, however, that if both parties desire a stenographic record or access to such record, the cost of the court reporter and such record shall be shared equally. Should any party refuse or neglect to appear for, participate in the arbitration hearing, the arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented. Either party, upon request at the close of the hearing, shall be given leave to file a post-hearing brief. The time for filing such brief shall be set by the arbitrator.

k.   The arbitrator shall have no power to modify or deviate from the provisions of this Addendum unless both claimant and respondent consent to such modification or deviation. To the extent that any matter necessary to the efficient and timely completion of the arbitration is not governed by this Addendum, the arbitrator shall, after conferring with the parties, have the power to enter rulings and establish standards necessary, in his or her sound discretion, to resolve the matter.

l.   Within thirty days after the arbitration hearing is closed, the arbitrator shall issue a written award setting forth his or her decision and the reasons therefor. Except as otherwise set forth in this Addendum, each party shall pay for its own costs and attorneys' fees incurred by such party, if any. However, if a party prevails on a statutory claim that affords the prevailing party the right to recover attorneys' fees and/or costs, then the arbitrator may award to the party that substantially prevails in the arbitration its costs and expenses (or any portion thereof), including reasonable attorneys' fees. The arbitrator's award shall be final, nonappealable and binding upon the parties, subject only to the provisions of 9 U.S.C. § 10, and may be entered as a judgment in any court of competent jurisdiction.

m.   The parties agree that reliance upon courts of law and equity can add significant costs and delays to the process of resolving disputes. Accordingly, they recognize that an essence of this Agreement is to provide for the submission of all Arbitrable Disputes to binding arbitration. Therefore, if any court concludes that any provision of this Addendum is void or voidable, the parties understand and agree that the court shall reform each such provision to render it enforceable, but only to the extent absolutely necessary to render the provision enforceable and only in view of the parties' express desire that Arbitrable Disputes be resolved by arbitration and, to the greatest extent permitted by law, in accordance with the principles, limitations and procedures set forth in this Addendum.

NAVEX Global, Inc

By: _Shon C Ramey_
     Shon C Ramey (Nov 28, 2016)

Name   Shon C Ramey

Title   General Counsel

Date
        Nov 28, 2016

By: _Richard A Stockwell Jr._
     Richard A Stockwell Jr. (Nov 28, 2016)

Name of employee:
        Richard A Stockwell Jr.

Date
        Nov 28, 2016

January2015