UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NAVEX GLOBAL, INC., | Case No. 1:19-cv-00382-DCN |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| RICHARD A. STOCKWELL, JR., | |
| Defendant. | |

## I. INTRODUCTION

Pending before the Court is Defendant Richard A. Stockwell, Jr.'s Motion to Dismiss or, alternatively, Motion to Strike (Dkt. 12) and NAVEX Global, Inc.'s ("NAVEX") Motion for Preliminary Injunction (Dkt. 16). Stockwell seeks to dismiss this action, alleging that the Court does not have jurisdiction to issue a preliminary injunction. NAVEX moves the Court for a preliminary injunction enjoining Stockwell from working for Whispli, an alleged direct competitor, throughout all North America.

On November 19, 2019, the Court held a hearing on both motions and received evidence on the Motion for Preliminary Injunction. After hearing closing arguments on the Motion for Preliminary Injunction, the Court took the motions under advisement. For the reasons set forth below, the Court DENIES Stockwell's Motion to Dismiss and GRANTS in PART and DENIES in PART NAVEX's Motion for Preliminary Injunction.

## II. BACKGROUND

On November 26, 2016, Stockwell began working for NAVEX. Stockwell and NAVEX executed a Confidentiality, Invention Assignment, Non-Compete and Arbitration Agreement (the "Agreement"). The Agreement generally states that if any dispute were to arise between the parties, it would be dealt with through arbitration, rather than through the courts. Further, the Agreement prohibits Stockwell from disclosing NAVEX's confidential information and from working with any of NAVEX's direct competitors in certain geographic regions (the "Restricted Area") for a period of eighteen (18) months after his termination from NAVEX.

During his employment with NAVEX, Stockwell attained the position of Senior Sales Executive. However, on September 20, 2019, Stockwell announced that he was resigning from NAVEX in order to accept employment with Whispli, an alleged direct competitor with NAVEX. NAVEX reminded Stockwell of his noncompete agreement and gave him the weekend to reconsider. On September 24, 2019, Stockwell elected to pursue employment with Whispli. NAVEX terminated his employment that day.

NAVEX filed its Complaint (Dkt. 1) on October 2, 2019 and its Motion for a Temporary Restraining Order ("TRO") (Dkt. 6) on October 11, 2019, seeking to prevent Stockwell from working for Whispli. Stockwell retained counsel shortly thereafter and the parties requested that the Court withhold ruling on the TRO so the parties could pursue negotiations. Those negotiations were unsuccessful, and NAVEX informed the Court that it would like to move forward with the TRO.

On October 28, 2019, pursuant to the stipulation of the parties, the Court set the hearing on NAVEX's motion for November 1, 2019. The following day, on October 29, 2019, Stockwell's counsel informed the Court that, contrary to his communications the previous day, he was unable to adequately prepare for the hearing and requested a continuance. Because Stockwell intended to begin work for Whispli before the requested continuance date, on October 31, 2019, the Court granted the TRO and enjoined Stockwell from working for Whispli for a period of 28 days. Dkt. 11.

### III. LEGAL STANDARD

#### 1. Motion to Dismiss

*a. 12(b)(1)*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction. A lack of jurisdiction is presumed unless the party asserting jurisdiction establishes that it exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, the plaintiff bears the burden of proof on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Sopcak v. Northern Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995). If the court determines that it does not have subject matter jurisdiction, it must dismiss the claim. Fed. R. Civ. P. 12(h)(3).

*b. 12(f)*

Rule 12(f) of the Federal Rules of Civil Procedure allows the court to strike from "any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a Rule 12(f) motion is to avoid

the costs that arise from litigating spurious issues by dispensing with those issues prior to trial. *Sidney-Vinstein v. A.H. Robins* Co., 697 F.2d 880, 885 (9th Cir. 1983). Rule 12(f) motions are "generally regarded with disfavor[.]" *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). *See also Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991) ("[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."). Whether to grant a motion to strike is within the courts' discretion. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010).

## 2. Motion for a Preliminary Injunction

A plaintiff seeking a preliminary injunction "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *CTIA-The Wireless Ass'n v. City of Berkeley*, 854 F.3d 1105, 1114 (9th Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008)); *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy & Co., Inc*., 240 F.3d 832, 839 n.7 (9th Cir. 2001)). A preliminary injunction's basic function is "to "preserve the status quo ante litem pending a determination of the action on the merits." *See* Fed. R. Civ. P. 65; *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980).

## IV. DISCUSSION

## 1. Motion to Dismiss

Stockwell challenges subject-matter jurisdiction in two ways. First, he claims that

the amount in controversy is not satisfied.[1] Second, Stockwell argues that the arbitration clause contained in the Agreement strips the Court of subject-matter jurisdiction. The Court will address each argument.

### a. Amount in Controversy

Before the Court determines whether the arbitration clause strips it of subject-matter jurisdiction, it must first determine if it has subject-matter jurisdiction to begin with. For the reasons set forth below, this Court finds that it has subject-matter jurisdiction pursuant to 28. U.S.C. § 1332.

A federal district court has jurisdiction over a civil action only if the action (1) involves a federal question or (2) the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states (also known as diversity jurisdiction). 28 U.S.C. §§ 1331, 1332(a). Further, it is the party asserting federal jurisdiction that must prove the case is properly in federal court. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936). Here NAVEX alleges diversity jurisdiction. It is undisputed that the parties are citizens of different states, as required by § 1332. The only issue here is whether the amount in controversy exceeds $75,000.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (quoting *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)); *see also Jackson v. Am. Bar Ass'n*, 538 F.2d

---

[1] Stockwell labels this argument as a personal jurisdiction challenge, yet the Court wil address it as a subject-matter jurisdiction challenge. *See* 28. U.S.C. § 1332.

829, 831 (9th Cir. 1976) ("Where the complaint seeks injunctive or declaratory relief and not monetary damages, the amount in controversy is not what might have been recovered in money, but rather the value of the right to be protected or the extent of the injury to be prevented.") Though the value of an injunction is difficult to determine, a precise determination as to its value is not required. *Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166, 1172 (C.D. Cal. 2008).

Further, in the Ninth Circuit, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015) (internal quotations omitted). This legal certainty is clearly met in only three situations: "1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and 3) when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction." *Id.* (citing *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 363–64 (9th Cir. 1986).

None of these three situations are present here. NAVEX claims that their damages, though difficult to quantify, will be in excess of $75,000. Additionally, the general counsel (Shon Ramey)for NAVEX's declaration states that Stockwell's actions may "lead to price erosion that will be difficult or impossible to quantify." In his briefing, Stockwell asserts that his salary with Whispli exceeds $100,000 a year, which supports NAVEX's claim that the value of the injunction is greater than $75,000. *Meyer v. Howmedica Osteonics Corp.*, 2015 WL 728631, at *4 (S.D. Cal Feb. 19, 2015) (stating that, to determine the value of a

preliminary injunction concerning a noncompete agreement, courts may look to the employee's current salary from the new employer). With this information, the Court cannot "declare to a legal certainty that the case is worth less" than what NAVEX claims, and thus the amount in controversy is satisfied. *Id.*; *see also Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010) (holding that under the legal certainty test "a federal court has subject matter jurisdiction unless upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount").

    b.  *Arbitration Agreement*

        i.   Arbitration Clause

The Court now turns to Stockwell's argument that the arbitration clause in the Agreement otherwise precludes subject-matter jurisdiction. "[W]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In Idaho, a Court must interpret an unambiguous contract according to its plain language. *Potlatch Educ. Ass'n v. Potlatch School Dist. No.* 285, 226 P.3d 1277, 1280 (Idaho 2010).

Here, the plain language of the arbitration clause shows that the parties agreed to arbitrate any disputes between NAVEX and Stockwell. Yet the Agreement also explicitly permits NAVEX to apply to the Court for injunctive relief. Section 10 of the Agreement states that any "Arbitrable Disputes," which is broadly defined and includes disputes

between Stockwell and NAVEX such as this current dispute,[2] "shall, subject to Section 11.1 herein, be resolved exclusively by binding arbitration . . . ." Dkt. 1-3, at 6. Section 11.1 outlines NAVEX's ability to seek injunctive relief from either state or federal courts, which is also addressed later in Section 10. *Id.* ("Notwithstanding the above . . . this Agreement shall not limit [NAVEX's] right to apply to a court of competent jurisdiction for a . . . preliminary injunction . . . .") Despite this language, Stockwell relies on the breadth of this arbitration clause and the case *Inlandboatmen's Union of Pac. V. Dutra Group*, 279 F.3d 1075 (9th Cir. 2001) (overruled by *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014)) for the position that the arbitrator, not the Court, should hear this dispute and thus the Court lacks subject-matter jurisdiction.

Stockwell's reliance is misplaced. Primarily, Stockwell ignores the plain language in Section 10 Agreement that explicitly grants NAVEX, notwithstanding the breadth of the arbitration clause, the right "to apply to any court of competent jurisdiction for a temporary restraining order, preliminary injunction, or similar relief in order to preserve the status quo or prevent irreparable injury pending the full and final resolution of such dispute through arbitration . . . ." Dkt. 1-3, at 6. This language is not tucked away in a remote corner of the Agreement but is included in the arbitration clause itself. Further, Section 10 states that Arbitrable Disputes are "subject to Section 11.1 herein." Dkt. 1-3, at 6. Section 11.1—

---

[2] "Arbitrable Disputes" is defined as "any controversy or dispute between [Stockwell] and [NAVEX] or between [Stockwell] and any affiliate or an agent of [NAVEX], including but not limited to directors, officers, managers, other employees or members of[NAVEX and its affiliates], who are being sued in any capacity, as to all or any part of this Agreement, any other agreement, any dispute or controversy whatsoever pertaining to or arising out of the relationship between you and [NAVEX] or the dissolution or termination of the same, and/or the arbitrability thereof." Dkt. 1-3, at 6.

which is conveniently the following section in the Agreement—is titled "Injunctive Relief" and explicitly spells out NAVEX's ability to seek a temporary restraining order or preliminary injunction from a state or federal court. *Id.*

This language in the Agreement renders *Inlandboatmen's* distinguishable and unpersuasive. *Inlandboatmen's* involved a labor union dispute and required the district court to analyze the claims under § 301 of the Labor Management Relations Act. *Inlandboatmen's*, 279 F.3d at 1078. Specifically, the court was tasked with determining whether a side agreement between the parties was subject to the arbitration clause contained in the parties' previously agreed-upon collective bargaining agreement. There is no evidence that the arbitration clause in that case included a carve out for injunctive relief. Though the language Stockwell cherry-picks from *Inlandboatmen's* regarding the court's approval of arbitration is certainly helpful to his position, the facts and legal posture of the current dispute are so dissimilar that the Court finds *Inlandboatmen's* inapplicable here.

The Court finds *Toyo Tire Holdings of Americas Inc. v. Cont'l Tire N. Am., Inc.,* 609 F.3d 975 (9th Cir. 2010) to be the more relevant case. In that case, the defendants and Toyo entered into a Partnership Agreement, which included an arbitration clause but allowed the parties to seek "judicially imposed interim relief, including injunctive relief." *Id.* at 977. Based on Toyo's alleged collaboration agreement with a competitor, the defendants sought to dissolve the partnership, acquire certain assets from Toyo, and enforce a noncompetition clause, all pursuant to the Partnership Agreement. *Id.* In response, Toyo requested arbitration and sought injunctive relief from both the arbitrator and the federal district court. *Id.* at 978. The district court determined that it did not have

the power to grant interim injunctive relief and denied Toyo's request for relief. *Id.*

On appeal, the Ninth Circuit reversed and held that the district court *did* have the power to issue injunctive relief. It reasoned that "the congressional desire to enforce arbitration agreements would frequently be frustrated if the courts were precluded from issuing preliminary injunctive relief to preserve the status quo pending arbitration and, *ipso facto*, the meaningfulness of the arbitration process." *Id.* at 980 (quoting *PMS Distributing Co. v. Huber & Suhner, A.G.*, 863 F.2d 639, 641–42 (9th Cir. 1988). The *Toyo* court reasoned that there is an inevitable delay between requesting arbitration and receiving a ruling from an arbitrator or arbitration panel, and if the district court could not provide injunctive relief then any subsequent relief could be useless. *Id.* at 981. Thus, a district court's ability to issue injunctive relief preserving the status quo does not diminish the arbitration process but defends it.

*Toyo* is on point here. Both NAVEX and Stockwell agreed to arbitrate any disputes, but also agreed that NAVEX could seek injunctive relief from a court if appropriate while arbitration was proceeding. NAVEX, based on Stockwell's employment with Whispli, did precisely that. According to the Agreement and current law in the Ninth Circuit, this Court is able to grant injunctive relief if NAVEX can show that it is necessary to maintain the status quo pending arbitration.

### ii.    Other Concerns

Stockwell further takes issue with the fact that NAVEX filed a complaint because, even if the Court can oversee a preliminary injunction, it cannot address causes of action in a complaint. NAVEX filed its Complaint, alleging causes of action for breach of contract

and misappropriation of trade secrets. Dkt. 1. As the Court stated, the parties explicitly agreed that a judge, not an arbitrator, would decide matters regarding temporary restraining orders, preliminary injunctions, or other similar relief. Filing a complaint, however, is a necessary step in seeking a preliminary injunction because, generally speaking, the filing of a complaint procedurally opens a case. Without a complaint, a court has no way of hearing a motion for a preliminary injunction. Thus, it would be unreasonable to interpret the arbitration clause in a way that would allow NAVEX to seek a preliminary injunction from a court of competent jurisdiction but prevent NAVEX from taking the necessary steps in seeking the injunction.

To be certain, the carve out in the arbitration clause allowing NAVEX to obtain injunctive relief does not grant NAVEX *carte blanche* to bypass arbitration and pursue its claims in federal court. NAVEX fully understands this and does not argue otherwise. In fact, both parties agree that an arbitrator should and will handle the substance of this dispute, i.e. all issues less the temporary restraining order and the preliminary injunction, per the Agreement. NAVEX is simply moving the Court for a preliminary injunction, something that both parties explicitly agreed NAVEX could do.

Stockwell next argues that, for this Court to grant injunctive relief, it "must necessarily make a host of findings and rulings regarding the Agreement that are expressly reserved to the arbiter." Dkt. 13, at 4. This, Stockwell argues, both forces him to argue an inconsistent position on the validity of the Agreement and will unduly prejudice the arbitrator's ability to make independent decisions.

The Court is again unpersuaded by Stockwell's arguments. To start, the Court is not

required to make a host of findings and rulings regarding the Agreement in order to grant a preliminary injunction. "A preliminary injunction is not a preliminary adjudication on the merits, but a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Textile Unlimited, Inc. v. A.BMH Co., Inc.*, 240 F.3d 781, 786 (9th Cir. 2001); *see also Athlete's Foot Brands, LLC v. Whoooahh, Inc.*, 2007 WL 2934871, at *3 (D. Idaho Oct. 5, 2007) ("The general rule is that findings of fact and conclusions of law made in a court's disposition of a motion for preliminary injunction are provisional.") Regarding the merits of an action, to grant injunctive relief the Court need only find that NAVEX enjoys a "likelihood of success" on the merits of the action. *See CTIA-The Wireless Ass'n,* 854 F.3d at 1114. Whether it is the Court or an arbitrator that determines which party is ultimately successful on the merits, there is no requirement that the Court must "make a host of findings and rulings" to grant injunctive relief.

Stockwell's argument that an arbitrator will be improperly influenced is equally unpersuasive. In *Henry Schein, Inc. v. Archer and White Sales, Inc.,* the Supreme Court stated:

> [A]n arbitrator might hold a different view . . . than a court does, even if the court finds the answer obvious. It is not unheard-of for one fair-minded adjudicator to think a decision is obvious in one direction but for another fair-minded adjudicator to decide the matter the other way.

139 S. Ct. 524, 531 (2019). Regardless of what the Court's decision is on issuing a preliminary injunction, that decision does not improperly influence an arbitrator.

Lastly, the Court is unconvinced by Stockwell's argument that this suit forces him to argue inconsistent positions. Specifically, Stockwell claims that because he is now

arguing that the Agreement is valid, he may not argue at a later date that the Agreement is invalid, for example, as a contract of adhesion. Even if this premise is true, Stockwell has not cited to any authority that permits or requires a court to dismiss a case based upon such arguments. Further, at oral argument, both the Court and NAVEX acknowledged that Stockwell was not contesting the validity of the Agreement solely for purposes of these motions. Put simply, Stockwell has not waived his right to argue the Agreement is invalid. Any litigation hurdles that may arise from this narrow issue are not a legally sufficient reason to dismiss this case.

In sum, the parties here agreed to arbitrate any disputes that arise between them. However, they also agreed that NAVEX would have the ability to seek a preliminary injunction from a court if the need arose. Based on this, the arbitration clause does not prevent the Court from considering NAVEX's Motion for Preliminary Injunction, but in fact specifically allows for it. Thus, the arbitration clause does not strip this Court of subject-matter jurisdiction.

### c. Subject Matter Jurisdiction Conclusion

The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy has been satisfied. Further, pursuant to the Agreement, the Court is able to retain jurisdiction over this case for the narrow purpose of providing injunctive relief. As such, Stockwell's Motion to Dismiss is DENIED.

### 2. Motion to Strike, Alternatively

Stockwell alternatively asks the Court to strike NAVEX's Complaint in its entirety.

In doing so, Stockwell again relies entirely on the arbitration clause, claiming that because all NAVEX's causes of action are subject to that clause, they are therefore immaterial and should be stricken. Further, Stockwell claims that even if NAVEX may seek injunctive relief from the Court, it did not title any of its causes of action as "injunctive relief."

As the Court has explained above, NAVEX is appropriately seeking a preliminary injunction. An integral part of seeking a preliminary injunction is filing a complaint. In its Complaint, NAVEX included two causes of action (Breach of Contract and Misappropriation of Trade Secrets), and a prayer for relief seeking an injunction, not damages. Moreover, NAVEX is not required to—nor could it—title a cause of action "injunctive relief" as Stockwell suggests. As its name indicates, injunctive relief is a remedy and is more appropriately included as a prayer for relief, not a cause of action. *See, e.g., Timothy v. Oneida County*, 2015 WL 2036825 at *3 (D. Idaho April 30, 2015) ("Injunctive relief is a remedy—not a stand-alone claim."). In short, Stockwell has not provided an adequate reason to justify the Court striking NAVEX's Complaint. Stockwell's Motion to Strike is DENIED.

### 3. Motion for Preliminary Injunction

As previously stated, a plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. NAVEX has alleged two related but separate causes of action: Breach of Contract and Misappropriation of Trade Secrets in Violation of the Idaho Trade Secrets Act.

The Court will first address whether NAVEX can satisfy each element necessary for the Court to issue a preliminary injunction with regards to the Breach of Contract claim.

### a. Breach of Contract

#### i. Success on the Merits

Under Idaho law:

> A key employee . . . may enter into a written agreement or covenant that protects the employer's legitimate business interests and prohibits the key employee . . . from engaging in employment or a line of business that is in direct competition with the employer's business after termination of employment, and the same shall be enforceable, if the agreement or covenant is reasonable as to its duration, geographical area, type of employment or line of business, and does not impose a greater restraint than is reasonably necessary to protect the employer's legitimate business interests.

Idaho Code § 44-2701. NAVEX's position on this claim is fairly straightforward. NAVEX alleges that it and Stockwell, a key employee,[3] executed the Agreement on November 28, 2016. The Agreement prevents Stockwell from disclosing or using NAVEX's proprietary information after his termination. The Agreement also contains solicitation and noncompete clauses, which prevent Stockwell, for a period of eighteen (18) months, from soliciting NAVEX's customers and competing with NAVEX within the Restricted Area,

---

[3] A "key employee" is defined as:

> [E]mployees . . . who, by reason of the employer's investment of time, money, trust, exposure to the public, or exposure to technologies, intellectual property, business plans, business processes and methods of operation, customers, vendors or other business relationships during the course of employment, have gained a high level of inside knowledge, influence, credibility, notoriety, fame, reputation or public persona as a representative or spokesperson of the employer and, as a result, have the ability to harm or threaten an employer's legitimate business interests.

Idaho Code § 44-2702(1). In its briefing and at oral argument, NAVEX referred to subsections of the Idaho Code that presently do not exist. *See, e.g.,* Dkt. 19, at 7 (citing to Idaho Code § 44-2704(6) though there is no subsection (6) of that section). The Court, with some effort, was able to locate most of these citations, but the Court did not consider citations to statutes that it could not locate.

respectively. In direct contravention of this noncompete clause, Stockwell obtained employment with Whispli. NAVEX fears that Stockwell will now solicit NAVEX customers and utilize NAVEX's proprietary information. In response, Stockwell does not contest the validity of the Agreement, but argues that the Restricted Area is unreasonable and therefore unenforceable.

Put in simple terms, the noncompete prevents Stockwell from working for a direct competitor "in any city or county or geographic area in which [Stockwell] provided services or had a significant presence or influence on behalf of [NAVEX]."[4] Dkt. 1-3, at 5. However, determining what is included in the Restricted Area is complicated by the next portion of the noncompete clause: "For the avoidance of doubt, the Restricted Area includes without limitation any particular region or country in which [Stockwell] [was] involved in providing Restricted Products and any city, county or similar geographic subdivision in which a Customer, as defined in Section 7.2,[5] is located." This sentence

---

[4] In full, this portion of the clause states:

[Y[ou will not, directly or indirectly, whether as an employee, officer, director, consultant, owner, manager, advisor, investor, or otherwise, in any city or county or geographic area in which you provided services or had a significant presence or influence on behalf of the Company or a Group Company ("Restricted. Area") (i) render advice or services to, or otherwise assist, any person, association, or entity who is engaged, directly or indirectly, in the Restricted Business; (ii) hold a 2.5% or greater equity, voting or profit participation interest in any person, association, or entity who is engaged, directly or indirectly, in the Restricted Business or (iii)carry on or be in any way engaged, concerned or interested in or have business dealings with the Restricted Business.

Dkt. 1-3, at 5.

[5] Section 7.2 defines "Customer" as:

[A]ny purchaser of Company or Group services or products within the 24 months period prior to any solicitation or other activity prohibited under this Section 7 and about whom one of the following is true: during the term of your employment, (i) you worked on or were connected to such customer's account; (ii) you had contact with the customer as a

broadens the Restricted Area to an entire country, provided Stockwell was involved in providing products to that country, as well as to any geographic area in which a Customer resides. In other words, the Restricted Area, per the Agreement, contains three different restrictions: (1) the city, county, or geographic area in which Stockwell had a "significant presence or influence;" (2) the particular region or country in which Stockwell was involved in providing Restricted Products; and (3) any city, county, or similar geographic region in which a Customer resides.

Stockwell claims that the Restricted Area is limited to the geographic areas he serviced clients for NAVEX, namely Washington, Oregon, British Columbia, and the greater area of San Jose, California.[6] Because these are the only areas Stockwell ever worked in, he claims that these are the areas in which he "had a significant presence or influence on behalf of NAVEX." Stockwell goes on to argue that the second and third portions of the Restricted Area render the noncompete clause ambiguous. This ambiguity, according to Stockwell, should be construed against NAVEX.

On the flip side, NAVEX contends that all three restrictions support its position that the Restricted Area encompasses all North America. First, NAVEX construes the phrase "significate presence or influence" broadly. NAVEX argues that because some of the companies Stockwell sold to conduct business throughout the country his influence extends

Company or Group representative; or (iii) about whom you learned or developed Proprietary Information.

[6] These were the four areas NAVEX stated in it's Complaint. However, at oral argument, NAVEX claimed that Alaska, Nevada, and Florida were also included because Stockwell received commissions from sales in those areas.

to all North America. Second, the plain language of the noncompete clause states that the Restricted Area includes the particular countries in which Stockwell sold products, which is the United States of America and Canada.[7] And third, while employed at NAVEX, Stockwell learned proprietary information about numerous NAVEX customers other than the ones he sold to; therefore, even though the customers he sold to were headquartered in Washington, Oregon, British Columbia, and the greater San Jose area, the Restricted Area extends beyond the areas in which Stockwell provided services.

The Court is concerned with each of these interpretations. For example, Stockwell makes a valid point about the ambiguity in the noncompete clause, but fails to appreciate that, even absent the second portion expanding the Restricted Area to the entire country, the portion relating to customers might limit his employment to other areas in addition to Washington, Oregon, British Columbia, and San Jose. Additionally, NAVEX appears to substitute itself for Stockwell regarding the "significant presence or influence" portion of the Restricted Area. Put differently, if Stockwell sold NAVEX's products to a company in Seattle and the company then used the products in Texas, a plain reading of the noncompete clause dictates that Stockwell has a significant presence or influence in Seattle and it is NAVEX, not Stockwell, who has a significant presence or influence in Texas. NAVEX may have a "significant presence or influence" across all North America, but that does not automatically mean that Stockwell does.

Even with this concern, the Court is able to decide if NAVEX is likely to succeed

---

[7] NAVEX makes no argument as to the other 21 countries in North America.

on the merits without directly resolving these discrepancies. *See CTIA-The Wireless Ass'n*, 854 F.3d at 1114. This is because in Idaho courts may modify an unreasonably restrictive noncompete agreement to make it reasonable, and therefore enforceable, under what is sometimes referred to as a "blue pencil" rule. Idaho Code § 44-2703; *Pinnacle Performance, Inc. v. Hessing,* 17 P.3d 308, 313 (Idaho Ct. Ap. 2001) ("The Idaho Supreme Court has sanctioned the modification of otherwise unreasonable covenants not to compete."); *DePuy Synthes Sales v. Williams*, 2017 WL 5011880 at *4 (D. Idaho Nov. 2, 2017) (noting the Idaho legislature's adoption of "blue penciling"). Here, as was stated above, for purposes of solely this motion the parties stipulate that the Agreement is valid. Stockwell's sole argument is that because the Restricted Area is too broad, the noncompete unenforceable and thus NAVEX is not likely to succeed on the merits.[8] Yet, even if it is determined that the noncompete clause is unreasonable, Idaho law allows for it to be adjusted to the point it is reasonable and therefore enforceable.

In sum, NAVEX has put forth evidence to show that the parties validly executed the Agreement, which contains a noncompete clause. Stockwell's only contention is that the noncompete clause is overbroad and therefore unenforceable. Even if this is true, the Court finds that NAVEX is likely to succeed on the merits because the noncompete clause may be modified in a manner to make it reasonable and therefore enforceable.

## ii.    Irreparable Harm

A plaintiff may obtain an injunction only where it can "demonstrate immediate

---

[8] Again, the Court acknowledges that Stockwell reserved the right to argue against the validity of the Agreement in arbitration.

threatened injury." *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). A possibility of irreparable harm is insufficient. Instead, Plaintiffs must establish that irreparable harm is likely, not just possible, in the absence of an injunction. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008). Courts "recognize[] that intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm." *Rent-A-Center, Inc. v. Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991); *see also Ocean Beauty Seafoods, LLC, v. Pac. Seafood Grp. Acquisition Co., Inc.*, 648 Fed. Appx. 709, 711 (9th Cir. 2016) ("An enforceable noncompete agreement affords fair protection to a legitimate interest of the former employer. Thus, a breach of the agreement occasions harm. Because the harm is intangible and difficult to quantify, it qualifies as irreparable.").

Here, Stockwell summarily argues that a preliminary injunction cannot be based off speculative injury. He does very little, though, to convince the Court that NAVEX's injuries are speculative. It is not speculative that Stockwell is now employed with a direct competitor of NAVEX. If Stockwell is able to solicit NAVEX's customers, especially the ones he personally sold to, on behalf of a competing company, NAVEX is likely to be damaged in a manner that would be difficult to quantify. Further, Stockwell acknowledged in the Agreement that his breach of the noncompete clause would result in immediate and irreparable harm. Dkt. 1-3, at 6 ("You understand that in the event of a breach or threatened breach . . . of this Agreement by you, [NAVEX] will suffer immediate and irreparable harm for which there is no adequate remedy at law."). Thus, it is likely that NAVEX will

establish irreparable harm.

      iii.    <u>Balance of Equities</u>

NAVEX argues that Stockwell is a sophisticated, high-ranking employee who agreed to execute a noncompetition provision in the Agreement. Even when Stockwell informed NAVEX of his intent to work for Whispli, NAVEX reminded him of his noncompete agreement and gave him the weekend to rethink his decision. Because the noncompete clause is narrowly tailored and allows Stockwell to work as a sales executive in any other industry, NAVEX argues that equity favors holding the parties to their agreement.

Stockwell approaches this from a different angle. Stockwell utilizes a "David v. Goliath" argument, claiming that NAVEX is a company with more than 14,000 customers around the world and reports an annual revenue of between $100 million and $500 million. On the other hand, Whispli only has 200 clients, none of which are in America, and Stockwell is making only just over $100,000 annually in his agreement with Whispli. In addition, Stockwell states that his wife is currently battling serious health issues and that Whispli, on top of being the only source of income, provides much needed health insurance.[9]

The Court cannot invalidate a noncompete clause on the basis that the new employer is not as wealthy as the former. Virtually every action to enforce a noncompete agreement is a "David v. Goliath" in one form or another. A balance of the equities does not require

---

[9] There was no evidence presented to the Court concerning Stockwell's wife, as Stockwell declined to present any evidence at the hearing. Thus, the Court assumes without deciding that this is true.

the Court to side with the party who is taking on the role of David; rather it requires the Court to balance the equities. Here, Stockwell chose to sign the Agreement and to not compete with NAVEX upon his termination. Stockwell had the opportunity to seek employment elsewhere, yet he elected to sign the Agreement and work for NAVEX.

The health of Stockwell's wife somewhat evens the scale, but does not tip the balance of the equities in Stockwell's favor. Stockwell was well-aware of his wife's condition and their need for income and insurance before he left NAVEX, yet he chose to leave its employment despite NAVEX's request for him to reconsider.[10] Though the Court is concerned about Stockwell's wife, equity cannot be used to relieve Stockwell from the consequences of something he knew he was getting into.

Further, evidence shows that Whispli is hiring Stockwell to work as a sales manager in all North and South America. The preliminary injunction NAVEX seeks, even if granted in full, would not prevent Stockwell from working for Whispli entirely, but just throughout North America. Stockwell would still be able to receive an income and health insurance— provided Whispli is willing to still offer him the position. Thus, the Court finds that the balance of equities favors NAVEX.

    iv.    <u>Public Interest</u>

"The public interest inquiry primarily addresses impact on non-parties rather than parties." *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002) (overruled on other grounds). In the Ninth Circuit, a statute signifies the public's interest

---

[10] At no point has either party presented evidence or argument as to why Stockwell left NAVEX. The Court does not speculate any reasons here.

in a matter. *Golden Gate Restaurant Ass'n. v. City and Cty. Of San Francisco,* 512 F.3d 1112, 1127 (9th Cir. 2008) (citing Wright, Miller, & Kane, Federal Practice and Procedure § 2948.4, at 207 (2d ed. 1995) ("The public interest may be declared in the form of a statute.")). Here, Idaho Code permits and employer and employee to enter into a noncompete agreement. Idaho Code § 44-2701. Chapter 27 further allows for certain provisions in a noncompete agreement to be presumptively valid and allows a court to modify an unreasonable noncompete agreement so that the agreement is enforceable. *Id.* at §§ 44-2702 to 2704. Generally speaking then, the public interest favors the enforcement of noncompete agreements, as long as they are not overly broad.

v.    Breach of Contract Summary

First, NAVEX enjoys a likelihood of success on the merits on its Breach of Contract claim. Second, it will likely experience irreparable harm if Stockwell went work for Whispli with no restrictions. Third, both the balancing of the equities and the public interest favor granting an injunction in this case. As such, NAVEX has met all the elements for a preliminary injunction on its Breach of Contract claim.

b.  *Misappropriation of Trade Secrets*

Because the Court has determined that NAVEX has met the elements for an preliminary injunction on its Breach of Contract claim, it will is not analyze NAVEX's other claim. *See Finance Exp. LLC v. Nowcom Corp.*, 564 F. Supp. 2d. 1160, 1168 (C.D. Cal. 2008) ("In order to be granted a preliminary injunction, Finance Express only needs to show the requisite combination of probable success on the merits and the possibility of irreparable injury with respect to any one of its claims."); *C & C Properties, Inc. v. Shell*

*Co.*, 2015 WL 5604384, at \*4 (E.D. Cal. Sept. 23, 2015) ("A plaintiff need only show success on the merits is likely for one claim, not all claims to meet the burden of establishing an entitlement to a preliminary injunction.") (*report and recommendation adopted* December 3, 2015). As the parties have agreed that an arbitrator should decide the merits of this case, the Court is disinclined to unnecessarily comment on the merits of this cause of action. Thus, as it appears to be in the best interest of both parties, the Court will not address NAVEX's other claim here.

### c. *Preliminary Injunction Conclusion*

Based on the foregoing, the Court finds that a preliminary injunction is appropriate. As stated above, the purpose of a preliminary injunction here is to maintain the status quo pending arbitration. Granting a preliminary injunction here will preserve the meaningfulness of the arbitration process. *Toyo,* 609 F.3d at 980. However, equity does not call for a preliminary injunction as broad as NAVEX requests. In cases like this, "[a] district court has broad latitude in fashioning equitable relief . . . ." *N. Cheyenne Tribe v. Norton,* 503 F.3d 836, 843 (9th Cir. 2007) (internal quotations omitted). Under certain circumstances, "the equities demand a partial injunction." *Id.*

The Court may define the scope of the preliminary injunction as it deems equitable; it may be broader or narrower than the language in the Agreement. It is not the Court's duty to enforce the Agreement, that belongs to the arbitrator. However, the Court elects to use the Agreement as a guideline for the preliminary injunction in the interest of equity. As such, the Court will grant a preliminary injunction that can essentially be divided into three sections. First, Stockwell shall not disclose or use any of NAVEX's confidential or

proprietary information. Second, Stockwell shall not solicit business from any of NAVEX's Customers, as defined *supra*, n. 5. Third, Stockwell shall not be employed by a direct competitor, including Whispli, as defined *supra*, n. 4, in the areas of Washington, Oregon, British Columbia, and the greater San Jose area. However, Stockwell may be employed by a direct competitor, including Whispli, in other areas in North America and throughout the world, provided he is still bound by the other aspects of this preliminary injunction. This injunction shall last until: (1) this matter is fully arbitrated; (2) the parties stipulate to modify or terminate the injunction; (3) eighteen (18) months from September 24, 2019; or (4) the Court orders otherwise; whichever occurs first.

In granting this preliminary injunction, it is important to note what the Court is *not* doing. The Court is not enforcing the Agreement. The Court is not making a ruling on the merits of this action. *Textile Unlimited, Inc.,* 240 F.3d at 786. Further, the Court is neither deciding which, if any, of the parties' interpretations of the noncompete clause is correct nor is it seeking to define any the Agreements terms. As such, nothing in this decision is binding in arbitration. Additionally, nothing in this decision should be construed or used to influence an arbitrator. Regardless of whether the arbitrator's conclusions are the same or differ from the Court's, those conclusions should be reached independent of the Court's ruling here. *Henry Schein, Inc.,* 139 S. Ct., at 531.

///

///

///

///

# IV. ORDER

**IT IS HEREBY ORDERED THAT:**

1. Stockwell's Motion to Dismiss and, Alternatively, to Strike (Dkt. 12) is DENIED.

2. NAVEX's Motion for Preliminary Injunction (Dkt. 16) is GRANTED in PART, DENIED in PART, as indicated above.

3. The Temporary Restraining Order (Dkt. 11) shall be null, void, and of no effect once this Order issues.

DATED: November 25, 2019

David C. Nye
Chief U.S. District Court Judge